LONE STAR OB/GYN ASSOCIATES,
Plaintiff,

v.

AETNA HEALTH, INC., Defendant.

Civil Action No. SA–07–CA–848–XR.

United States District Court,
W.D. Texas,
San Antonio Division.

May 29, 2008.

Stephen W. Boyd, Boyd & Holland, PLLC, San Antonio, TX, for Plaintiff.

Dimitri D. Zgourides, John Bruce Shely, Andrews & Kurth, L.L.P., Houston, TX, Roy R. Barrera, III, Shawn C. Golden, Golden & Barrera, LLP, San Antonio, TX, for Defendant.

## ORDER

XAVIER RODRIGUEZ, District Judge.

On this date, the Court considered Plaintiff Lone Star Ob/Gyn's Motion to

Remand and for Costs (docket no. 4) and Plaintiff's Motion for Leave to File Amended Petition (docket no. 17). After careful consideration, the Court will grant the Motion for Leave to File Amended Petition (docket no. 17), grant the Motion to Remand (docket no. 4), and deny the Motion for Costs (docket no. 4).

## I. Background

Plaintiff filed suit in County Court at Law No. 10, Bexar County, against Aetna Health. The Original Petition alleges that Lone Star and its physicians have entered into certain legal agreements with Aetna. Under these agreements, Lone Star provides covered health care services to patients enrolled in various health plans administered by Aetna and its affiliates, and the Aetna affiliates, in turn, are obligated to pay Lone Star for covered services provided to their members per certain agreements. Plaintiff alleges that the relationship between Lone Star and Aetna is governed by Texas Insurance Code chapters 843 and 1301. Plaintiff Lone Star's Original Petition asserted a single cause of action complaining that Aetna "has failed to pay the proper amount for the services in each of the claims listed in Exhibit 'A', marked P001 thru P285 after notice of demand" and that "[s]uch underpayments are violations of the Texas Insurance Code, which provides relief to Plaintiff." Plaintiff sought statutory damages, including penalty, interest, and attorneys' fees, as set forth in the Texas Insurance Code.

Defendant Aetna removed this action on the basis of complete preemption. Aetna asserts in its Notice of Removal that "[t]he Complaint necessarily raises a federal claim because ERISA completely preempts Plaintiff's state law claims." Aetna asserts that Plaintiff's claims are based on Aetna's alleged failure to pay health care benefits under the terms of various employee health benefit plans governed by ERISA, and Plaintiff's claims relate to such ERISA plans and are completely preempted by ERISA. Aetna notes that some or all of Lone Star's patients were participants or beneficiaries of various employee welfare benefit plans established and maintained by employers, or groups of employers, pursuant to ERISA, and that Aetna provided various claims administrative services to these ERISA plans, including administering claims for benefits available under the terms of the plans. Aetna points out that Lone Star alleges that it submitted claims to Aetna for payment of benefits for covered health care services, and that, under the legal agreements identified in the Petition, Plaintiff is entitled to payment only for "covered services" under the terms and conditions of the patient's respective ERISA plan. Accordingly, Aetna contends, Plaintiff's claim directly relates to Aetna's processing and payment of assigned medical benefits available, if at all, under the terms of the ERISA plans, and thus the claim falls within the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a) and is completely preempted.

Plaintiff filed a Motion to Remand the case to state court, arguing that its claims are not preempted. Plaintiff asserted that the Petition brings direct causes of action against Aetna based on Aetna's violations of the Texas Insurance Code, that Aetna "completely mis-characterizes Plaintiff's claims" because "Aetna would have this Court believe that Plaintiff is seeking payment for claims that were denied" when, in fact, "Plaintiff is merely seeking damages for payments that were not paid according to the contracts between it and Defendant."

In response, Aetna claimed that it had provided "undisputed evidence showing that at least three representative claims

were ... denied for lack of coverage under the ERISA plans at issue." Lone Star did not respond to this argument, but in a supplement re-iterated its position that "[t]he dispute here is not over the right to payment, which concededly might be said to depend on the plan-beneficiary relationship, but instead, is over the amount of payment, which depends on the terms of the contractual agreement between the parties and the application of the Texas prompt pay statutes." Lone Star also disclaimed Aetna's assertion that a coverage dispute was involved.

Lone Star's failure to respond to Aetna's argument that it was seeking damages related to at least three denied claims was troubling, and the Court ordered Lone Star to file a reply brief on that issue. As the Court noted in its order, there can only be liability under the Texas Insurance Code provisions if the claims are in fact payable. For example, § 843.342 states that "if a clean claim submitted to a health maintenance organization *is payable* and the health maintenance organization does not determine under this subchapter that the claim is payable and pay the claim on or before the date the health maintenance organization is required to make a determination or adjudication of the claim, the health maintenance organization shall pay the physician or provider making the claim the contracted rate owed on the claim plus a penalty ...." Similarly, § 1031.137 provides that "if a clean claim submitted to an insurer *is payable* and the insurer does not determine under Subchapter C that the claim is payable and pay the claim on or before the date the insurer is required to make a determination or adjudication of the claim, the insurer shall pay the preferred provider making the claim the contracted rate owed on the claim plus a penalty ...." The Court noted that Lone Star's arguments appeared "to presume that the claims in dispute were payable," but that was contradicted by Aetna.

On May 8, Lone Star filed a Motion for Leave to Amend its Petition. Therein, Plaintiff "requests leave to file [its] Amended Petition ... to correct the list of claims attached to the Original Petition, which inadvertently included denied claims." Plaintiff states that the amendment is "an attempt to clarify and remedy an inadvertent mistake in the attachment to the original petition." The proposed Amended Petition adds an allegation that "Aetna has found the claims filed by Lone Star to be valid and covered under each respective insurance plan and accordingly made a partial payment for each claim. However, Aetna has failed to pay the proper amount for the services in each of the claims listed in Exhibit 'A', marked P001 thru P285 (with denied claims redacted) after notice and demand." Lone Star also filed a Reply as ordered by the Court, stating that it had "discovered that a small number of denied claims were inadvertently listed in Exhibit 'A'." Further, the Reply states that "[i]t appears to Plaintiff's counsel that these denied claims could very well be subject to ERISA statutes. By reviewing Plaintiff's Original Petition it is clear that Plaintiff's intent was to only assert claims that were accepted and partially paid by Aetna. With the intended claim being asserted that the payments did not meet the contractual agreement between Aetna and Lone Star and therefore were in violation of the Texas Insurance Code." Plaintiff asserts that "with the filing of the Amended Petition, Aetna's basis for removal would not be valid and this case should be remanded."

Aetna has objected, arguing that Plaintiff is seeking to manipulate the forum by eliminating its preempted claims, and that "Plaintiff's forum-shopping tactics have been repeatedly rejected by the Fifth Cir-

cuit and require this Court to retain jurisdiction over this matter."

## II. Motion for Leave to Amend

■ Lone Star seeks leave to amend to "clarify and remedy an inadvertent mistake in the attachment to the original petition." Although leave to amend pleadings "shall be freely given when justice so requires," FED. R. CIV. P. 15(a), leave to amend is not automatic. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir.1991). The decision to grant or deny a motion to amend is within the sound discretion of the trial court. *Id.* In exercising its discretion, the trial court considers such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and futility of amendment." *Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

■ In this case, however, Lone Star seeks leave to amend after the expiration of the deadline to amend pleadings contained in the Court's scheduling order. The scheduling order, issued January 7, 2008, provides that the deadline to amend pleadings was January 18, 2008. Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. *S & W Enterprises, L.L.C. v. SouthTrust Bank,* 315 F.3d 533, 536 (5th Cir.2003). To determine whether to extend the scheduling order deadline, the Court considers: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave. *Id.*

■ After considering these factors, the Court concludes that Lone Star's motion should be granted. The Court first considers the good-cause standard of Rule 16. Lone Star contains no explanation for its failure to timely move to amend. Aetna filed its response to Lone Star's motion to remand in October 2007. As previously noted, Lone Star did not respond to Aetna's argument that Lone Star had included denied claims in its attached list of claims. The deadline to amend pleadings was not until January 18, 2008, well after Aetna's response, and thus Lone Star had ample time to consider Aetna's response, examine its attached claims, and move to amend. This factor weighs against Lone Star. The second factor, importance of the amendment, weighs in favor of Lone Star. The amendment is important given that if it is not allowed, Lone Star would be forced to pursue claims that it does not wish to pursue, and which could have broad implications for this case as a whole. The third factor is neutral, as Aetna has not shown any potential prejudice in allowing the amendment, and the Court finds none. The fourth factor is also neutral, given that there is no prejudice and no continuance would be needed at this still-early stage in the litigation. Considering all the factors together, the Court admonishes Lone Star's counsel for failing to consider Aetna's response and moving to timely amend, but the Court concludes that forcing Lone Star to pursue claims that it wishes to dismiss would be counter to judicial economy and the interests of justice.

The Court thus turns to the Rule 15 factors. The Court finds no reason to doubt Plaintiff's assertion that the inclusion of the preempted claims was inadver-

tent, and the Court finds no ill motive in Plaintiff's motion for leave to amend. There is no evidence of any prejudice to Aetna if the amendment is allowed, and the amendment would not be futile. Though Lone Star should have examined its Petition in response to Aetna's original briefing rather than waiting until the Court's order to reply on that issue, the Court finds that the delay in moving to amend was not undue. Thus, considering the appropriate factors, the Court finds that leave to amend should be granted. The Court next turns to the issues of whether it has federal question jurisdiction and whether remand is appropriate.

## III. ERISA preemption

### A. Complete preemption as federal question

Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). One category of cases over which district courts have original jurisdiction is "[f]ederal question" cases: cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, determining whether a particular case arises under federal law turns on the "well-pleaded complaint" rule. One exception to the well-pleaded complaint rule occurs when a federal statute completely preempts that plaintiff's claim: "[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption," the state claim can be removed. *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). This is because "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based

on federal law." *Id.* ERISA is one of these statutes.

■ Due to the carefully crafted enforcement scheme and expansive preemption provisions of ERISA, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Aetna Health, Inc. v. Davila,* 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). The ERISA civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive power" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Hence, "causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Davila,* 542 U.S. at 209, 124 S.Ct. 2488. The state cause of action need not precisely duplicate the elements of an ERISA claim to be preempted. *Id.* at 215, 124 S.Ct. 2488.

If the facts underlying a state law claim bear some relationship to an employee benefit plan, courts evaluate the nexus between ERISA and state law in the framework of ERISA's statutory objectives. *Mayeaux v. Louisiana Health Serv. & Indem. Co.,* 376 F.3d 420, 432 (5th Cir. 2004). Relevant statutory objectives include establishing uniform national safeguards "with respect to the establishment, operation, and administration of [employee benefit] plans," and "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." *Id.* Thus, ERISA preempts a state law claim if a two-prong test is satisfied: (1) the state law claim addresses an

area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationships among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Id.*

## B. Texas Insurance Code provisions

Texas Insurance Code chapter 843 is titled the Texas Health Maintenance Organization Act and governs, in part, the relationship and contracts between HMOs and physicians/providers (subchapter I) and submission of and payment for claims to physicians/providers (subchapter J). Chapter 843 establishes procedures for health care providers to submit claims and for HMOs to review and pay claims. Section 843.342 provides penalties for an HMO's violation of certain claims payments provisions.

Texas Insurance Code chapter 1301 governs Preferred Provider Benefit Plans and governs, in part, the relationship between PPOs and physicians/health care providers (subchapter B) and claims payment (subchapter C). Section 1301.137 provides penalties for a PPO's violation of Chapter 1301's claims payment requirements.

In its motion to remand, Lone Star notes that "[i]t is important to note that Plaintiff is bringing claims that a beneficiary or plan participant cannot bring under the Prompt Payment Act." Plaintiff argues that its claims are based on the independent contract between it and Aetna and on Aetna's breach of the Texas Insurance Code. Plaintiff further contends that "[t]he dispute here is not over the right to payment, which concededly might be said to depend on the plan-beneficiary relationship, but instead is over the amount of payment, which depends on the terms of the contractual agreement between the parties and the application of the Texas prompt pay statutes."

## C. Aetna's arguments

▮ Aetna argues that a number of Lone Star's claims are dependent on and derive from the rights of ERISA plan beneficiaries to benefits under their respective ERISA-governed plan. Aetna asserts that Lone Star is suing Aetna because Aetna paid improper amounts for "covered health care services" under the Physician Group Agreement ("PGA"), but under the terms of the PGS, Lone Star is only entitled to payment for covered services that are determined in accordance with the Member's applicable plan. Thus, Aetna argues, the PGA necessarily requires reference to each patient's respective ERISA plan to determine which services are covered, and under controlling ERISA authority, Lone Star's claims are inextricably linked to several ERISA-governed plans. Aetna contends that "[t]he Fifth Circuit has repeatedly found that a hospital's claims based on the alleged improper processing of assigned medical claims for ERISA plan benefits provides a basis for removal jurisdiction."

## D. Applicable Precedents

### 1. Pre–Davila and Mayeaux precedents

In *Transitional Hospitals Corp. v. Blue Cross & Blue Shield of Texas*, 164 F.3d 952 (5th Cir.1999), the Fifth Circuit considered claims by a hospital against certain insurers and benefit plan administrators surrounding an alleged misrepresentation that the patient's employer's ERISA plan would reimburse the hospital for 100% of the patient's hospital bills after exhaustion of his Medicare benefits. When the hospital presented the defendants with the bill, defendants determined that the hospital was a nonparticipating hospital under the

employer's ERISA plan, and paid a greatly reduced amount of the bill. The hospital sued in state court, alleging breach of contract, common-law misrepresentation, and statutory misrepresentation under the Texas Insurance Code. The insurer defendants removed, and the hospital subsequently amended its complaint to add the employer and the administrative committee as parties and to assert a claim under ERISA § 1132(a)(1)(B). The Fifth Circuit noted that "ERISA does not preempt state law when the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage." 164 F.3d at 954. However, the Court stated, "a hospital's state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when the hospital seeks to recover benefits owed under the plan to a plan participant who has assigned her right to benefits to the hospital." *Id.* The Court discussed the applicable framework: "[W]hen there is some coverage" the court must "determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." *Id.* at 955. The Court then held that the hospital's misrepresentation claims were not preempted because they were not dependent on or derived from the patient's right to recover benefits under the ERISA plan—to the extent he was not covered by the policy as represented, defendants made actionable misrepresentations. However, the breach of contract claims based on the defendants' failure to pay the full amounts of benefits

due under the terms of the policy were held preempted.

In *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.,* 187 F.3d 1045 (9th Cir.1999), the Ninth Circuit directly considered "whether the claims of medical providers against a health care plan for breach of their provider agreements are preempted by" ERISA. The dispute centered around changes in the fee schedules made by Blue Cross. Blue Cross's "overriding contention [was] that the Providers' right to receive reimbursement from Blue Cross depends upon the assignment of the right to benefits for payment for medical services from their patients, some of whom are beneficiaries of ERISA-covered health plans, and therefore that the Providers' claims regarding the fee provisions in their provider agreements are claims for benefits under the terms of ERISA benefit plans and fall within § 502(a)(1)(B)," which permits plan participants or beneficiaries to recover benefits due under an ERISA plan.[1] *Id.* at 1050. The court recognized that ERISA preempts the state law claims of a provider suing as an assignee of a beneficiary's right to benefits under an ERISA plan, but held that "the fact that these medical providers obtained assignments of benefits from beneficiaries of ERISA-covered health care plans does not convert their claims into claims for benefits under ERISA-covered health care plans, and that the medical providers' claims [did] not otherwise fall within ERISA's express preemption clause." *Id.* at 1048. The court distinguished an earlier case on the basis that the provider sought, as an assignee, to recover reimbursement due to his assignor

1. Section 502(a), 29 U.S.C. § 1132(a), expressly allows only plan participants and beneficiaries to bring a civil action. However, when a participant or beneficiary validly assigns his or her rights to a third-party provid-

er, the third-party provider may bring a derivative action under the terms of the plan. *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 845 F.2d 1286, 1290 (5th Cir.1988).

patients under the terms of the benefit plan—the plan was the only basis for reimbursement to the provider. In *Anesthesia Care*, however, the court noted, "the Providers and Blue Cross have executed provider agreements, and it is the terms of the provider agreements that Providers contend Blue Cross has breached." *Id.* at 1051. "Indeed," the court noted, "the Providers are asserting contractual breaches and related violations of the implied duty of good faith and fair dealing, that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and Blue Cross." *Id.* Thus, the court stated, "[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount*, or level, of payment, which depends on the terms of the provider agreements." *Id.*

The court also addressed Blue Cross's argument that because the provider agreement referenced "covered" billed charges, the providers' claims depended on interpretation of the plan. The court rejected this argument because "the Providers' claims arise from Blue Cross' alleged breach of the provider agreements' provisions regarding fee schedules, and the procedures for setting them, not what charges are 'covered' under" the ERISA plan, and thus the Providers' claims did not rest upon that term. *Id.* Rather, "[w]here the meaning of a term in the Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision." *Id.* Thus, "[i]n view of the fact that, although beneficiaries of ERISA-covered plans have assigned their rights to reimbursement to the Providers, the Providers are asserting state-law claims arising out of separate agreements for the provision of goods and services, [the court found] no basis to conclude that the mere fact of the assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan." *Id.* at 1052. In considering Blue Cross's express preemption argument, the court concluded that "because there is no claim that beneficiaries have not received their full benefits under the plans, or any argument that interpretation of the provider agreements will somehow work a change in the benefits to which beneficiaries will be entitled under ERISA-covered plans, the Providers' claims do not encroach on the relationship between beneficiary and plan." *Id.* at 1053–54. Further, "because the Providers' claims arise from contracts that a health care provider makes with its medical providers, the difficulties that Congress sought to avoid with ERISA's preemption clause are not implicated here. The state law that the Providers invoke does not create an alternative enforcement mechanism for securing benefits under the terms of ERISA-covered plans." *Id.* at 1054. Accordingly, the claims did not fall within the scope of ERISA's enforcement provision, § 1132(a), and did not otherwise "relate to" an ERISA plan within the meaning of ERISA's express preemption clause, § 1144(a). The court therefore affirmed the district court's dismissal for lack of subject matter jurisdiction.

In *Lakeland Anesthesia v. Louisiana Health Service & Indemnity Company*, No. Civ. A. 00–1151, 2000 WL 1801834 (E.D.La. Dec.6, 2000), the court held that an anesthesia providers' claim for damages arising out of Blue Cross's alleged willful and/or negligent breach of contract in failing to make timely payment for services rendered was not completely preempted by ERISA. The provider asserted that Blue Cross wrongfully delayed their claims for payment and, in some instances, denied

the claims on the erroneous pretense that they had not been timely submitted. *Id.* at *1. The provider asserted that the suit did not "challenge the denial of payment on the basis that the services rendered by plaintiffs were not 'covered services', nor [did] it dispute the denial of 'benefits' that might have been due and owing to any ERISA participant or beneficiary." *Id.* Even though there was some evidence of an assignment of rights from the plan participant to the medical provider, the court concluded that the provider plaintiff was "not suing here as a participant or beneficiary of an ERISA plan, nor [was] it claiming to pursue rights as an assignee ..., but it [was] pursuing this claim for delayed payment of benefits based upon its separate provider agreement, not the plan." *Id.* at *8.

In *Orthopaedic Surgery Associates of San Antonio v. Prudential Health Care Plan*, 147 F.Supp.2d 595 (W.D.Tex.2001), Judge Biery concluded that a medical provider's contract claim was not preempted. He noted, "Here, we have third-party health care providers asserting breach of contract claims based on their own contracts with the defendant. Plaintiffs agree their claims would be preempted if they had asserted them as assignees of the plan participants, and although plaintiffs may be entitled to seek relief as assignees of the ERISA plan beneficiaries for payment of services, this lawsuit was not filed in that capacity. Instead, plaintiffs maintain their claims stem from a contractual relationship directly between them and the defendant, *i.e.*, the Specialty Care Physicians Agreements, and are not relying, in whole or in part, upon their position as assignees of the benefits of any claimant under an ERISA plan." *Id.* at 599–600. Prudential raised essentially the same arguments that Aetna raises here. Judge Biery distinguished *Transitional Hospitals* on the basis that "there is no mention

in the opinion of a Specialty Care Agreement existing between the plaintiff hospital and the defendant Blue Cross & Blue Shield, and it appears the hospital based its claim on an assignment from an ERISA plan participant." *Id.* at 600. Judge Biery further relied on the Ninth Circuit's decision in *Blue Cross v. Anesthesia Care Associates*, the district court's decision in *Lakeland Anesthesia v. Louisiana Health Service & Indemnity Co.*, and an article concerning the role of providers in the era of managed care, D. Brian Hufford, *Health Care Litigation What You Need to Know After Pegram*, to conclude that the providers' claims were not preempted.

In *Foley v. Southwest Texas HMO*, 226 F.Supp.2d 886 (E.D.Tex.2002), the district court found no complete preemption of plaintiff's Texas Insurance Code claims. The plaintiffs filed this suit under the Texas Insurance Code's Health Maintenance Organization Act and for unjust enrichment against the HMOs to recover payments for services rendered. The court held that the "plaintiffs [were] merely attempting to hold the defendants liable for the obligations they undertook in a contract. These plaintiffs [were] not attempting to stand in the shoes of their patients to collect benefits promised to the defendants' enrollees." *Id.* at 897. Further, the Texas Insurance Code provision does "not violate either prong of the Fifth Circuit's preemption test set out in *Memorial Hospital [System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990)]" because "such a statute does not address an area of exclusive federal concern, but rather it allows a party that has not received payment to bring suit to make another party pay in accordance with a contract that party has with a third party" and the "statute has no effect on the relationship between traditional ERISA entities." The plaintiffs were neither plan participants,

nor beneficiaries and there was no claim that the statute would prevent beneficiaries from receiving benefits or change beneficiaries' entitlement to benefits. *Id.*

In *Baylor Univ. Medical Ctr. v. Arkansas Blue Cross Blue Shield*, 331 F.Supp.2d 502 (N.D.Tex.2004), Judge Fish considered claims by Baylor for breach of contract and late payment of claims under the Texas Insurance Code and found they were not preempted. Baylor and Blue Cross had entered into a provider agreement. Baylor brought suit in state court to recover for medical services provided to a patient, Bobby Wall. Baylor submitted a "clean claim" as defined by the Texas Insurance Code [2] and alleged that, since submitting the claim, it had been paid only a portion of the charges contractually due, and that it was due penalties for late payment. Blue Cross removed, and Baylor moved to remand. Judge Fish first noted that "[e]nforcing a contract to provide medical services in exchange for payment for those services is hardly an exclusive area of federal concern." *Id.* at 509. He noted that Baylor was suing as a party to, or third party beneficiary of, an independent contract between Baylor and Blue Cross pursuant to state contract law, and that Baylor's claims were neither dependent upon nor derived from Wall's rights to recover benefits under an ERISA plan. Rather, Baylor's right to payment for covered services was governed by the contract between Baylor and Blue Cross and did not implicate the restrictions and limitations of ERISA. Further, Judge Fish concluded, the claims did not directly affect or modify the relationship between Blue Cross and its plan participants or beneficiaries, including Wall. Because Baylor was seeking to enforce its own contract with Blue Cross, it was suing on its own behalf as a creditor, not on behalf of Wall. That Baylor could have sued as an assignee was not dispositive, and Baylor, as master of its claim, could avoid federal jurisdiction by exclusive reliance on state law. Given Baylor's independent right of action as a creditor, the court would not recharacterize Baylor as an assignee. Accordingly, Judge Fish held that the breach of contract claim was not preempted. Judge Fish further found that ERISA did not preempt Baylor's claims under the prompt payment provisions of the Texas Insurance Code because the statute did not address an area of exclusive federal concern and Wall's ERISA plan provided only factual background for Baylor's statutory claims. The court declined to "insulate an insurer from liability against a third-party health care provider seeking to enforce its rights under a state statute that requires prompt payment of claims." *Id.* at 511. Judge Fish concluded that the statutory claims would not directly affect the relationship between traditional entities because plan participants' obligations would remain constant and the plans' terms would be unmodified. Similarly, the statutory claims did not enforce rights protected by ERISA's civil enforcement provision because Baylor sought to enforce the Texas Insurance Code, and Baylor's right of recovery was independent of Wall's right as plan participant.

In *South Texas Spinal Clinic v. Aetna Healthcare, Inc.*, Civ. A. No. SA–03–89–FB, 2004 WL 1118712 (W.D.Tex. March 22, 2004), Judge Biery considered the propriety of removal of a medical provider's claims under the Texas Insurance Code's prompt pay provisions. Judge Biery studied the district court's decision in *Baylor*

---

**2.** At the time, a "clean claim" was defined as "a completed claim ... submitted by a ... provider for medical care or health care services under a health care plan" or health insurance policy.

*Univ. v. Arkansas Blue Cross and Blue Shield,* as well as a decision from the Eastern District of Texas, *Foley v. Southwest Texas HMO,* 226 F.Supp.2d 886 (E.D.Tex.2002). Based on those cases and the fact that the plaintiff was not seeking recovery as an assignee but "in its own capacity under the Texas Insurance Code because of the contracts," Judge Biery found no complete preemption.

### 2. *Aetna Health, Inc. v. Davila, 542 U.S. 200 (2004)*

In *Davila,* participant and beneficiary plaintiffs sued the plan administrator under the Texas Health Care Liability Act, alleging tort injuries stemming from the administrator's decision to deny coverage. They alleged that the administrator failed to exercise ordinary care in handling coverage decisions in violation of the THCLA. The Supreme Court reversed the Court of Appeals, which had concluded that the plaintiffs were not seeking benefits that were denied, but tort damages arising from an external, statutorily imposed duty of care, and thus the claims were not preempted. The Court held that the duties imposed by the THCLA in the context of the cases did not arise independently of ERISA or the plan terms because, if the administrator had correctly determined that there was no coverage, then the decision was not the proximate cause of the plaintiffs' damages. The Court noted the significance of the fact that the THCLA creates no obligation to provide treatment not covered by the plan. The Court concluded that interpretation of the plan was an essential part of the plaintiffs' THCLA claim and that THCLA liability would exist only because of the administrator's administration of the ERISA plan. Thus, the administrator's potential liability derived entirely from the particular rights and obligations established by the benefit plans and the cause of action was not

entirely independent of the ERISA plan. Thus, because the plaintiffs sued "only to rectify a wrongful denial of benefits promised under ERISA-regulated plans" and did not attempt to remedy any violation of a legal duty independent of ERISA, the claims fell within the scope of ERISA's enforcement provision § 502(a)(1)(B) and were completely preempted.

### 3. *Mayeaux v. Louisiana Health Services & Indemnity Co., 376 F.3d 420 (5th Cir.2004)*

In this post-*Davila* case, the Fifth Circuit considered claims by a patient and her treating physician against an insurer arising from the insurer's denial of insurance coverage for the costs of the doctor's proposed treatment of the patient with high dose antibiotic therapy. After the insurer denied the claim as not covered, the plaintiff sued, seeking damages resulting from the failure to pay, as well as bad faith and fraud. Her doctor also sued, asserting claims for negligence, unfair trade practices, defamation, and interference with contract. The Fifth Circuit found the doctor's claims preempted because they "related to" the patient's ERISA plan in that they challenged the insurer's handling, review, and disposition of a request for coverage. The court concluded that the purpose of the claims was to collaterally attack the insurer's determination of the actual obligations under the terms of the policy, and noted that if a medical practitioner could collaterally challenge a plan's decision not to provide benefits, he would directly affect the relationship between the plan and its beneficiary, two traditional ERISA entities. Thus, the negligence and unfair trade practices claims were preempted. The defamation and intentional interference with contract claims were also preempted because they arose from the manner in which the insur-

er determined not to cover the patient's treatment and the subsequent notification to patients that the specific treatment would not be covered under the plan. The Court had "no difficulty holding that the existence of an ERISA plan [was] a critical factor in establishing liability for the state law causes of action asserted by" the provider, and thus there was conflict preemption.

### 4. Post–Davila and Mayeaux precedents

In two similar cases, the District of Maryland court determined that health care providers' claims for breach of contract against insurers were not preempted under *Davila* where there was no evidence of any assignment of the patients' rights to the providers. *Peninsula Regional Med. Ctr. v. Mid Atlantic Med. Servs.*, 327 F.Supp.2d 572 (D.Md.2004); *Johns Hopkins Hosp. v. Carefirst of Md.*, 327 F.Supp.2d 577 (D.Md.2004).

In *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir.2004), Pascack Valley Hospital sued the UFCW Union's welfare plan for breach of contract, and defendant removed. The district court denied remand, but the Third Circuit reversed, finding no preemption because the Hospital could not have brought its claims under ERISA. The Hospital provided services to two "eligible persons" for "covered services" under a Subscriber Agreement between the plan and MagNet, an independent consultant who also contracted with the Hospital (and thus the Hospital is a third-party beneficiary to the Subscriber Agreement). The .Hospital alleged that the plan failed to pay the Hospital for services rendered to these two patients according to the terms of the Subscriber Agreement. Though the plan had paid the Hospital for the services, the Hospital ar-

gued that the plan's failure to pay the claims within thirty days effected a forfeiture of the discounted rate and sought to recover the allegedly forfeited discount from the plan. The court discussed *Davila* and concluded that the case was removable only if (1) the Hospital could have brought its breach of contract claim under § 502(a), and (2) no other legal duty supports the Hospital's claim. *Id.* at 400. The court concluded that the Hospital could not have brought suit because it lacked standing to sue under § 502(a). The parties agreed that the Hospital was neither a participant nor a beneficiary, and that the Hospital did not have standing under ERISA to sue in its own right. *Id.* There was nothing in the record indicating that the two patients had assigned any claims to the Hospital, so the court did not consider whether the Hospital could have obtained standing as an assignee. *Id.* at 400–01. The court further concluded that the Hospital's state law claims were predicated on a legal duty that was independent of ERISA. *Id.* at 402. It noted that, "[t]he Hospital's claims, to be sure, are derived from an ERISA plan, and exist 'only because of' that plan" and that, "[w]ere coverage and eligibility disputed in this case, interpretation of the Plan might form an 'essential part' of the Hospital's claims." *Id.* at 402 (quoting *Davila*). However, coverage and eligibility were not in dispute, and instead the resolution of the suit required interpretation of the Subscriber Agreement, not the plan. The Hospital's right to recovery, if it existed, depended entirely on the operation of third-party contracts executed by the plan that are independent of the plan itself. The court found instructive the Ninth Circuit's decision in *Anesthesia Care* and Judge Biery's decision in *Orthopaedic Surgery Associates v. Prudential.* In the end, the court found dispositive the absence of an assignment because the Hospital was

asserting a claim that could not be asserted under the civil enforcement provision of ERISA. *Id.* at 404.

In *Tenet Healthsystem v. Crosby Tugs, Inc.*, 2005 WL 1038072 (E.D.La. Apr.27, 2005), the district court remanded a health care provider's breach-of-contract claim based on the insurer's failure to pay for services rendered to ERISA plan participants at the rate set forth in the parties' managed care contract. The court reasoned:

> Significantly, however, [plaintiff], as agreed by Defendants at oral argument, does not seek recovery based on an assignment of Mr. Dufrene's rights. Without an assignment of benefits from a "participant" or "beneficiary" of an ERISA plan, however, [plaintiff], as a third-party health care provider, does not have standing to assert an enforcement claim under § 1132(a). *See* 29 U.S.C. § 1132(a) (empowering participants, beneficiaries, and, under certain circumstances, fiduciaries, the Secretary of Labor, and states to bring civil actions). In addition, [plaintiff] seeks payment for health care services rendered at rates set forth in the ALC contract, not the Crosby Plan. These are alleged rights to compensation amounts that patients like Mr. Dufrene, i.e. participants and beneficiaries of the Crosby Plan, could not assert. Given the foregoing, [plaintiff], "at some point in time, could [not] have brought [its] claim under ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B) ]." *Davila,* 124 S.Ct. at 2496. Thus, the Court finds *Davila,* on which Defendants rely in arguing that § 1132(a) applies to [plaintiff]'s claims, to be distinguishable.
>
> The Court recognizes that certain aspects of the Crosby Plan's performance of the duties it allegedly owes under the ALC contract may implicate ERISA. In addition, the ALC contract arguably also appears to require consultation of certain provisions of ERISA plans such as the Crosby Plan. [Plaintiff] contends, however, that it is the applicable rate of payment, which it maintains is set forth in the ALC contract, that is in dispute here, rather than whether the services themselves were usual, customary, reasonable, medically necessary, or otherwise "covered" under the Crosby Plan. Defendants, as the removing parties, have not shown the contrary to be true. In any event, assuming that these points possibly could have some bearing on the issue of whether [plaintiff]'s claims are "conflict preempted" by virtue of the "relate to" clause of section 514(a) of ERISA, 29 U.S.C. § 1144(a), they do not, for the reasons previously stated, convert [plaintiff]'s claims for payment, as a third-party provider under the ALC contract, into "completely preempted" claims for benefits under, or to enforce, the Crosby Plan.

*Id.* at *2–3 (some footnotes and citations omitted). In a footnote, the court stated, "That [plaintiff] may, in fact, have an assignment, is not itself dispositive, if the rights at issue are those provided by a third party agreement, rather than an ERISA plan." *Id.* at *3 n. 3.

In *Radiology Associates of San Antonio v. Aetna Health, Inc.*, Civ. A. No. 03–CA–1152–RF (NN), 2005 WL 578150 (W.D.Tex. March 2, 2005), Magistrate Judge Nowak issued a report and recommendation on the plaintiff's motion for reconsideration of the order denying remand and the defendant's motion for reconsideration of the partial order of remand. Plaintiff Radiology Associates asserted a number of claims against Aetna, including breach of contract, violation of the Texas Insurance Code, violations of the Texas statutory claims payment requirements

and the Texas Prompt Pay Act, fraud, misrepresentation, and quantum meruit. Judge Furgeson originally remanded the breach of contract claim but retained all other claims as preempted by ERISA. The parties relied on *Davila* and *Mayeaux* to support their respective positions regarding remand of the breach-of-contract claim, which was premised on breach of the provider agreement between Radiology Associates and Aetna. Defendant relied on the fact that the parties' contract was "inextricably linked to the ERISA-regulated plan such that interpretation of the plan [was] necessary for adjudication of the claim." Defendant further argued that the plaintiff was suing as an assignee and that it had standing to sue under ERISA. Plaintiff denied that it was suing as an assignee, and argued that there was no evidence that it was an assignee of the plan beneficiaries. Defendant then provided "sworn proof" that the plaintiff was an assignee of plan beneficiaries. Magistrate Judge Nowak noted that "[t]his case appears to dance the middle line between the *Davila* decision, on the one hand," and decisions in which there was no evidence of any assignment because although there was "another, established legal duty in this matter—a contract-based obligation between the parties, i.e., privity—there [was] also some evidence in the record of assignment from defendant's insureds to plaintiff." She noted, however, that the presence or absence of assignments was "not the critical factor in establishing ERISA preemption, nor is the mere existence of some other legal duty between the parties." Rather, the determinative element "is the dependence or independence of the contract and/or the legal duty on the ERISA-regulated plan." She concluded that the parties' contract is not independent of the ERISA-regulated plan because the rights and obligations of the parties are defined by reference to the plan and the "entire scope of the parties' agreement is determined by the ERISA-regulated plan." The contract was not "independent" of the plan and did not establish an independent legal duty as contemplated by *Davila*. Thus, Magistrate Judge Nowak concluded, the breach-of-contract claim was completely preempted by ERISA. Magistrate Judge Nowak further concluded that the plaintiff's Insurance Code § 21.21 claim based on Aetna's filing of false financial statements was also preempted because plaintiff's damages were caused by its providing services to Aetna insured based on the misstatements, and the basis for this claim was plaintiff's contract, which was dependent on the ERISA plan. Judge Furgeson accepted Magistrate Judge Nowak's recommendation, agreeing that the scope of the rights and obligations of the parties are defined by reference to ERISA-regulated plans and the plaintiff's "challenge of Aetna's handling, review, and disposition of Plaintiff's requests for coverage is a collateral attack of Aetna's determination of the obligations under the terms of the contract governed by ERISA-regulated plans." Civ. A. No. SA–03–CA–1152–RF (docket no. 72).

In *Children's Hospital Corp. v. Kindercare Learning Centers,* 360 F.Supp.2d 202 (D.Mass.2005), the district court found no complete preemption of a hospital's claim against a plan for breach of a hospital services agreement when the plan had represented that the patient was covered but then later retroactively cancelled the coverage for failure to pay premiums. The court stated, "Plaintiff also contends that the Blue Cross Defendants breached the Hospital Services Agreement by failing to use their best efforts to ensure that Plaintiff would be paid for services rendered to Baby Girl D. more than thirty days prior to the date on which it was determined

that Mrs. Doe was retroactively disenrolled from the Plan. This breach of contract claim by the third party provider does not involve the ERISA plan, but an independent contract between the two entities." *Id.* at 206. Further, "the fact that Children's Hospital could have sued as an assignee is not the test for complete preemption. As a master of its own complaint, Children's Hospital had the right to assert independent causes of action regardless of the assignment." *Id.* at 207.

In *Halliburton Co. Benefits Committee v. Memorial Herman Hospital System,* Civ. A. No. H–04–1848, 2005 WL 2138137 (S.D.Tex. Sept.1, 2005), Halliburton Company Benefits Committee filed a declaratory judgment complaint against Memorial Hermann Hospital System after receiving a demand for additional payment for medical services provided to a Plan participant. The Committee sought a declaration that it had paid all the money it owed for the medical services Memorial Hermann had provided and that the prompt payment provisions of the Texas Insurance Code did not apply. The Committee asserted federal jurisdiction under ERISA, and Memorial moved to dismiss for lack of jurisdiction. In concluding that it lacked jurisdiction, the court reasoned that Memorial Hermann had the right to assert independent causes of action regardless of the assignment of its patients' rights: "Although a hospital's claim cannot be completely preempted if it did not receive an assignment that would give it standing to sue under ERISA, the assignment itself does not result in complete preemption of the hospital's claim." *Id.* at *4. Further, the court concluded that the breach-of-contract and related Texas Insurance Code claims did not derive entirely from an ERISA plan: "At bottom, Memorial Hermann alleges rights to compensation as a third-party health care provider at rates and under terms set out in the managed care contract, not the terms of the ERISA Plan covering Walters. A participant or beneficiary of the ERISA Plan, such as Walters, could not assert the claims Memorial Hermann seeks to pursue. Memorial Hermann could not 'have brought its claim under ERISA § 502(a)(1)(B).'" *Id.* Thus, the court concluded, the claims were not completely preempted by ERISA: "Memorial Hermann's statutory claims for violating Texas's prompt pay statutes do not enforce rights protected by ERISA's civil enforcement provision. The statutory causes of action are governed by state laws that enforce the prompt payment of claims by insurers to independent health care providers. The ERISA Plan insuring Walters provides the factual context for these claims, but the Plan is peripheral to the statutory obligation to pay Memorial Hermann promptly for services it rendered. The Texas Insurance Code-rather than the insured's employee benefit Plan-is the basis of this claim. Memorial Herman has a right of recovery under the Texas prompt pay statutes independent of Walters's rights as a Plan participant. The prompt-pay statutory claims are not completely preempted by ERISA." *Id.* at *5.

In *Crossroads of Texas, L.L. C. v. Great–West Life & Annuity Ins. Co.,* 467 F.Supp.2d 705 (S.D.Tex.2006), the district court held that the plaintiff provider's breach-of-contract and Texas Insurance Code claims were not completely preempted by ERISA. The court noted:

Plaintiffs allege causes of action for violation of Texas Prompt Pay Statutes, deceptive insurance practices under the Texas Insurance Code, quantum meruit, fraud, interference with contract, theft of service, and conspiracy. Those causes of action, as plead, are exclusively state law claims. However, Defendants contend that Plaintiffs' claims are for ERISA benefits under ERISA

§ 502(a)(1)(B). Defendants explain that ERISA plan participants assign their rights to seek reimbursements due from the insurer when they allow their physician provider to file a claim for benefits on their behalf. When the insurer fails to properly pay the claim, the physician provider has a derivative cause of action for ERISA benefits. Thus, Defendants contend, Plaintiffs' claims for reimbursement can only be sought through the civil enforcement provision of ERISA and are thus exclusively federal claims properly heard in federal court.

Plaintiffs contend that their causes of action are not derivative in nature, but are based directly on the contractual relationship that exists between the insurer, the PPO, and the provider networks and have only a tangential and tenuous impact on the ERISA plans administered by Defendant insurers. Lawsuits brought by independent third-party providers, such as Plaintiffs, based on "run-of-the-mill state-law claims-although obviously affecting and involving ERISA plans-are not preempted by ERISA," so long as they don't directly affect "the relationship between traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." Conversely, an independent third-party provider's "state law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when the [provider] seeks to recover benefits owed under a plan to a plan participant who has assigned her right of benefits to the [provider]." Thus, "[t]he critical question for the [C]ourt[ ] is whether the [Plaintiffs'] claim[s][are] based on [ ] direct cause[s] of action against [Defendants], in which situation [they are] not preempted, or whether [they are] deriv-

ative to the patient[s'] cause[s] of action, where ERISA applies."

. . .

Similar to the claims in *Orthopaedic Surgery Associates,* Plaintiffs' claims for payments denied as "out-of-network" under the One Health Plan PPO contract should be analyzed from the perspective of whether the claims are "derived from the rights of plan beneficiaries to recover benefits" or are based on the independent contractual relationship between non-ERISA entities. Plaintiffs allege that they are party to the One Health Plan PPO contract through Health First of Texas, P.A. Plaintiffs allege that Defendants contractually agreed to process all providers who are parties to the One Health Plan PPO contract as "in-network" claims and have failed to do so as to Plaintiffs. Plaintiffs' claims are based on breach of the One Health Plan PPO contract and the direct relationship between the parties to that agreement. The fact that Plaintiffs could have sued for the same amounts as assignees of beneficiaries' rights under ERISA-regulated plans does not convert their independent claim to enforce a third-party contract into a claim for ERISA benefits. The Supreme Court applied complete preemption to claims falling under ERISA § 502(a)(1)(B) to prevent plan beneficiaries and their assignees from pursuing benefits under state law claims and thereby subjecting ERISA plan administration to varying state laws. The Fifth Circuit has recognized that state law claims that are neither based on the terms of an ERISA plan nor brought by or against any party to an ERISA plan are generally not subject to complete preemption. Even where such state law claims have a connection with ERISA plans, the impact of such claims is too tenuous, remote,

and peripheral to warrant preemption. Therefore, the Court finds that Plaintiffs' claims for breach of the One Health Plan PPO contract are not preempted by ERISA § 502(a)(1)(B). *Id.* at 709–10 (citations omitted).

In *Memorial Hermann Hosp. System v. Aetna Health,* Civ. A. No. H–06–00828, 2007 WL 1701901 (S.D.Tex. June 11, 2007), the court considered whether plaintiff's claims that defendants breached managed care agreements between the parties and made misrepresentations in connection with the admission and treatment of its plan members was properly removed. Plaintiff and Aetna had a managed care contract wherein plaintiff agreed to provide healthcare at low rates in return for Aetna's obligation to encourage their members to choose plaintiff as their provider and to pay plaintiff's claims promptly as required by the Texas Insurance Code. Plaintiff claimed that defendant investigated claims as a subterfuge for delays in promptly paying for services rendered, and that even when defendant partially paid for services, defendant often failed to pay the full amount due under the managed care agreements. Plaintiff sued, alleging common-law tort and contract claims and statutory claims under the Insurance Code and DTPA. The court considered the preemption test set forth in *Davila:* (1) whether Memorial Hermann could have brought its state-law claims under § 502(a), and (2) whether there was no other independent legal duty that was implicated by the defendant's actions. With regard to the first part of the analysis, the court held that "[b]ecause of plaintiff's managed care contracts with the defendants, plaintiff has the right to assert independent causes of action regardless of its status as an assignee." *Id.* at *4. Thus, "the mere fact of an assignment does not result in complete preemption of the plaintiff's claim if it asserts a cause of action

outside its right to recover as an assignee." *Id.* Because the plaintiff sought recovery of damages through state-law claims that could not be brought under § 502, the court concluded that it lacked standing to assert an ERISA benefits claim. With regard to the second part of the analysis, the court noted that, as in *Anesthesia Care,* the dispute was not over the right to payment, but over the amount because the plaintiff sought damages measured by the charges for its discounted services to the defendants, not the full recovery it could receive on the patients' assigned benefit claims. A participant in the ERISA plans provided by the defendants could not assert plaintiff's claims under the managed care contracts. *Id.* at *5. Thus, because the plaintiff's rights did not derive entirely from the particular rights and obligations established by the ERISA benefit plans, the common-law breach-of-contract claim was not completely preempted under a *Davila* analysis. Similarly, the plaintiff's claims that defendants violated Texas's prompt pay statutes did not enforce rights protected by ERISA's civil enforcement provision because Texas passed the statutes to ensure prompt payment of claims by insurers to independent health care providers, not to ERISA plan participants. The court held that, while the ERISA plans may provide the factual context for these claims, the plans are peripheral to the statutory obligation to pay plaintiff promptly for services rendered. Thus, the prompt pay statutory claims were not completely preempted. *Id.*

In *Alabama Dental Ass'n v. Blue Cross Blue Shield of Alabama,* 2007 WL 25488 (M.D.Ala. Jan.3, 2007), the court considered potential class-action claims for breach of contract by in-network dentists, who had contracts with BCBS, and out-of-network dentists, who did not have such contracts and based their claims on the

contracts between BCBS and the patients. The court found that the claims of the in-network dentists were not completely preempted by ERISA. It reasoned:

Nevertheless, "[l]awsuits against ERISA plans for commonplace, run-of-the-mill state-law claims-although obviously affecting and involving ERISA plans-are not preempted by ERISA." Thus, "[t]he critical question for courts is whether the provider's claim is based on a direct cause of action against the managed care company, in which situation it is not preempted, or whether it is derivative to the patient's cause of action, where ERISA applies." Under this analysis, claims that concern only the agreements made between health care plans and providing physicians "do not touch on [the ERISA plan's] fiduciary status, or any claims that a beneficiary may make against [the ERISA plan] in that capacity."

Mitchell and Sanderson [the class representatives] both seek relief akin to that available under ERISA. A large portion of their claims attempt to recover additional benefits under their respective patients' ERISA plans. Litigation of these matters would inevitably be intertwined with BCBS's interpretation of plan terms and its refusal to pay certain benefits. Such relief is encompassed in ERISA's remedial provisions and is completely preempted by the statute unless the Plaintiffs base their complaint on an independent legal duty owed to them by BCBS. Sanderson [the out-of-network representative] does not base his allegations against BCBS on any duty independent of his patients' Benefit Agreements. As a result, Sanderson's claims are completely preempted by ERISA, and federal jurisdiction is proper in this case with regard to him and the putative class out-of-network dentists.

A distinct analysis applies to Mitchell and the in-network dentists, however, because these dentists have entered into contractual agreements with BCBS. As part of the Participating Dentist Agreements made with BCBS, in-network dentists agree to bill BCBS directly for the services they render to BCBS patients. The participating dentists could have presumably brought actions under ERISA to litigate the amount of compensation they received for individual patients under their respective plans. Mitchell has not chosen this route and has instead sought relief solely with respect to the Participating Dentist Agreement. Because Mitchell's claims "arise from contracts that a health care provider makes with its medical providers, the difficulties that Congress sought to avoid with ERISA's preemption clause are not implicated here.... As with many state laws of general applicability, [these] state law claims ... have only a 'tenuous, remote, or peripheral connection with the covered plans.' Therefore, the claims of Mitchell and the in-network dentists fall outside the preemptive scope of ERISA, and federal jurisdiction cannot be premised on this basis.

In *Northeast Hosp. Authority v. Aetna Health Inc.*, 2007 WL 3036835 (S.D.Tex. Oct.17, 2007), Northeast Hospital Authority sued Aetna for breach of contract based on the parties' Hospital Agreement. Aetna removed, arguing that the suit was directly challenging "Aetna's processing and payment of plan benefits" under the terms of ERISA plans governing the claims. *Id.* at *1. The court rejected Aetna's position and found no complete preemption, noting that "this case arises from the terms of a contract—the Hospital Agreement—that is independent of the ERISA participants' plans; the ERISA patients are not parties to the Hospital

Agreement; and parties dispute the level, rate, or amount of payment, not the right to payment. Northeast does not challenge Aetna's benefits determinations under the patients' ERISA plans. Nor does Northeast challenge the scope of the plans' coverage.... Northeast's right to recovery, 'if it exists, depends entirely on the operation of third-party contracts executed by the [parties] that are independent of the patients' ERISA plans." *Id.* at *10. As it does in this case, Aetna argued that the Fifth Circuit has "repeatedly held that ERISA preempts a health care provider's state law claims when the substance of the claim is the improper processing or denial of assigned medical claims." *Id.* However, the court distinguished Aetna's cases, including *Mayeaux* (noting that the plaintiff hospital disputed whether the high dose antibiotic treatment was covered under the plan's terms), and concluded that the substance of Northeast's claims was not "the improper processing or denial of assigned medical claims." *Id.* at *11. Rather, the hospital's claims arose out of the terms of the Hospital Agreement, not the terms of the ERISA patients' benefit plans. Accordingly, the court found that ERISA did not preempt the breach-of-contract claims.

### E. No Complete Preemption

Based on the Court's study of the cases above, the Court agrees with the overwhelming majority of cases holding that claims such as those asserted by Lone Star's Amended Petition are not completely preempted by ERISA's civil enforcement provisions. In the Amended Petition, the claims do not involve coverage disputes, and thus the terms of the ERISA plan would at most be peripheral to the claim, and no interpretation of plan terms would be required. It appears undisputable that plan participants and beneficiaries would be unable to bring claims against Aetna under the Texas Insurance Code and, not being parties to the provider agreements, would also be unable to sue under those agreements. The Court agrees with those cases concluding that the fact that Lone Star has received assignments from its patients is not dispositive, as Lone Star is not bringing the claims in this lawsuit in its capacity as assignee. Rather, it brings the claims in its own right based on the independent legal duty created by the provider agreement and the Texas Insurance Code. Thus, Lone Star is not bringing claims that it could have brought under ERISA § 502, as it is not suing as an assignee of the patients' rights, and it brings it claims based on duties that arise independently of the ERISA plans.

Though Lone Star may only be paid under the provider agreement for "covered services" and what is covered is determined by reference to the ERISA plans, Lone Star's Amended Petition concerns only claims for which coverage is undisputed, and thus the ERISA plans are not essential to its claims. The Court thus concludes that there is no complete ERISA preemption on any of Plaintiff's claims.

### F. Lone Star's request for costs for wrongful removal

Lone Star concedes that the inclusion of the claims for denied benefits would create ERISA preemption. Accordingly, Aetna's removal of this case was proper, and the motion for costs is denied.

### IV. Discretionary Remand

■ Because Lone Star included preempted claims in its Petition, removal was proper and this Court has jurisdiction over this case, including supplemental jurisdiction over the state-law claims. Lone Star's assertion that its amendment to delete the preempted claims would render

Aetna's basis for removal invalid is incorrect, since the propriety of the removal is determined by the original petition, not the amended petition. It is well settled that a plaintiff's voluntary amendment to a petition after removal to eliminate the federal claim upon which removal was based does not defeat federal jurisdiction. *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir.1985). Rather, Aetna correctly points out that the issue is now one of discretionary remand. However, the Court concludes that, in light of the specific facts of this case, Aetna's assertion that the Court must retain this case even after granting leave to amend is erroneous.

 This Court "has discretion to remand the remaining claims after a plaintiff has dropped the federal cause of action on which removal was originally based." *In re Wilson Industries, Inc.*, 886 F.2d 93, 95 (5th Cir.1989). In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the supplemental jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). The district court should consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand. *Id.* at 357, 108 S.Ct. 614. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered support a remand. *Id.*; *Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004 (5th Cir.1992) (district court did not abuse its discretion in retaining jurisdiction over supplemental state claims because the plaintiff's sole motive was to destroy removal jurisdiction).

 In this case, the Court finds that Lone Star's inclusion of the preempted claims was inadvertent, as its petition and briefing consistently indicated its belief that the claims at issue were covered rather than denied. The Court thus finds no improper attempt to manipulate the forum in Lone Star's motion for leave to amend to remove these claims. Because this case is in its early stages, the discretionary factors weigh in favor of remand. This case was removed in October 2007. Though this Court's busy docket did not allow the Court to immediately consider the motion to remand, during the time that this case has been pending here, the Court has not issued any decisions on the merits or even considered any discovery disputes. Further, any discovery obtained during removal may be used in state court. Aetna argues that "there remains a likelihood that Plaintiff will further disclose additional preempted claims as this case continues," and thus judicial economy and convenience of the parties weighs in favor of denying the motion to remand. However, the Court finds that this "likelihood" is too speculative a basis upon which to deny remand. Accordingly, the Court will exercise its discretion to remand the remaining claims to state court.

### Conclusion

Lone Star's Motion for Leave to Amend (docket no. 17) is GRANTED. Lone Star's Motion to Remand (docket no. 4) is GRANTED, but the Motion for Costs (docket no. 4) is DENIED.