# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 13, 2008

Charles R. Fulbruge III
Clerk

No. 07-20703

QUALITY INFUSION CARE INC

Plaintiff-Appellant

v.

HUMANA HEALTH PLAN OF TEXAS INC

Defendant-Appellee.

_____

No. 07-20887
_____

QUALITY INFUSION CARE INC

Plaintiff-Appellant

v.

HUMANA HMO INSURANCE

Defendant-Appellee.

Appeals from the United States District Court
for the Southern District of Texas
USDC Nos. 4:06-CV-1774 and 4:07-CV-1271

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

Nos. 07-20703 and 07-20887

EDITH BROWN CLEMENT, Circuit Judge:[*]

This appeal concerns two cases that were consolidated for appeal from the United States District Court for the Southern District of Texas, Nos. 07-20703 ("Case #1") and 07-20887 ("Case #2"). Both cases were removed from state court to federal court, and in both cases, the district court declined to remand to state court, and instead entered orders of dismissal on almost identical grounds. For the reasons provided below, we AFFIRM the district court in both cases.

## I. FACTS AND PROCEEDINGS

Defendant-Appellee Humana Health Plan of Texas, Inc. ("Humana")[1] is a Texas corporation that, at all relevant times, offered health care benefits under plans that it administered and maintained for certain employers (hereinafter referred to individually or collectively as "the Plan"). Eric Carstens ("Carstens") and Mary Williby ("Williby") were participants in the Plan, and it is undisputed that the Plan is an "employee welfare benefit plan" pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA"). The respective lawsuits largely concern treatments that Carstens and Williby each received from Plaintiff-Appellant Quality Infusion Care, Inc. ("QIC") for which QIC seeks payment from Humana.

A.    Case #1 - The Carstens Claim

On or before March 7, 2005, Carstens began to suffer from septic arthritis.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The named defendant in Case #2 was "Humana HMO Insurance," but the real-party-in-interest is Humana Health Plan of Texas, Inc., the entity shortened to "Humana."

2

To treat this condition, his physician prescribed a course of home infusion therapy for which Carstens and his physician chose QIC to provide the drugs necessary for such treatment. QIC provided Carstens the prescribed drugs from approximately March 7, 2005 until July 1, 2005, at a cost of $8,114.48. As part of their relationship, QIC asserts that "all of Carstens's rights, benefits, and claims under the Plan were assigned to [QIC]." After its treatment of Carstens, QIC sought payment from Humana. Humana refused because it said that QIC is an out-of-network provider—something QIC has not denied—and, as such, is ineligible for payment under the terms of the Plan.

Faced with Humana's denial of payment to QIC for services it rendered to Carstens, QIC filed suit with an Original Petition (or "complaint") on April 17, 2006 in a Texas state court. In its complaint, QIC provided as its "Cause of Action" alleged violations of Texas's "any willing provider" statute ("AWP"). The AWP provides, inter alia, that a health care plan may not prohibit a pharmacy from participating "as a contract provider under the . . . plan" if it otherwise meets "all terms and requirements and to include the same administrative, financial, and professional conditions that apply to pharmacies and pharmacists who have been designated as providers under the policy or plan." TEX. INS. CODE ANN. art. § 2(a)(2). QIC contends that it met all such "terms and requirements." For its relief, QIC seeks $8,111.48 in payment for the prescription drugs that it provided to Carstens, as well as resulting damages, interest, fees, and costs.

Humana filed an answer by general denial on May 18, 2006, and then, on May 25, 2006, removed the case to federal court, arguing that QIC's "claim is preempted by federal law under [ERISA] as codified in 29 U.S.C. § 1132." On April 25, 2007, Humana moved to dismiss under Federal Rule of Civil Procedure

12(b)(6), arguing that QIC would be eligible for reimbursement not under the terms of the Plan because it is an out-of-network provider, but only through the AWP, which, by its nature, is "completely preempted by ERISA" because the only benefits it can give to such providers are those otherwise provided by the Plan.

On May 15, 2007, QIC responded to Humana's motion to dismiss and moved to remand.[2] QIC argued that its claim is not preempted by ERISA—and, thus, is not a federal question for removal purposes—because at a minimum, the AWP is a law that regulates insurance, and, thus, is "saved from preemption" by ERISA's "savings clause," 29 U.S.C. § 1144(b)(2)(A). Given this assertion, QIC argues that the case should be remanded to state court. QIC did not contest dismissal apart from its argument concerning lack of subject matter jurisdiction.

On August 14, 2007, the district court denied QIC's motion to remand and granted Humana's motion to dismiss under Rule 12(b)(6), which it treated as a motion for judgment on the pleadings under Rule 12(c).[3] The district court distinguished between (1) "complete" preemption, which the Supreme Court held in Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004), includes "any state-law cause of action that duplicates, supplements, or supplants the . . . civil enforcement remedy" in ERISA § 502 and thereby offers a basis for removal, and

---

[2] QIC's motion to remand was filed pursuant to 28 U.S.C. § 1447. The fact that it was filed outside of the thirty-day period otherwise required by that statute is permitted by its exception for such motions on "subject matter jurisdiction" grounds. Id.

[3] The district court in Case #1 treated Humana's motion to dismiss under Rule 12(b)(6) as a motion for judgment on the pleadings under Rule 12(c), finding the former untimely, see Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (using similar treatment), while in Case #2 Humana sought to convert its motion there in like fashion. Both orders, however, granted a "Motion to Dismiss." Although the distinction should be noted, calling it dismissal or judgment on the pleadings is immaterial to the analysis herein. See id. (using Rule 12(c), but referring to dismissal interchangeably).

(2) "express" or "conflict" preemption, which under ERISA § 514 covers state laws that "relate to an[] employee benefit plan," 29 U.S.C. § 1144(a), yet unlike complete preemption, includes a "savings" exception for state laws that "regulate[] insurance," id. § 1144(b)(2)(A), and provides only a federal defense and not a basis for removal.  The district court held that QIC's claim under the AWP is subject to complete preemption, not conflict preemption, because it is ultimately a claim for benefits, albeit by assignment, under the terms of the Plan—a classic form of relief under ERISA § 502.[4]  The district court noted that the AWP "does not give rise to obligations independent of ERISA or plan terms, because it prohibits a plan from restricting an insured's choice of pharmacy only to the extent that the policy itself provides coverage for the services."

In support of its holding, the district court not only cited the Supreme Court's opinion in Davila, but also three other cases in the same district on the same issues and to similar ends—Quality Infusion Care, Inc. v. Unicare Health Plans of Texas, No. 4:06-CV-3752, 2007 WL 1887734 (S.D. Tex. June 29, 2007); Quality Infusion Care, Inc. v. Unicare Health Plans of Texas, No. 4:06-CV-1689, 2007 WL 760368 (S.D. Tex. Mar. 8, 2007); Quality Infusion Care, Inc. v. Aetna Health Inc., No. 4:05-CV-3308, 2006 WL 3813774 (S.D. Tex. Dec. 26, 2006).  The district court distinguished the Supreme Court's decision in Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003), which found a similar AWP law in Kentucky to be saved from preemption as a law regulating insurance, because it said that Miller "dealt with [conflict] preemption under [ERISA] § 514, not

---

[4] ERISA § 502(a)(1)(B) authorizes a participant of an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

5

complete preemption under [ERISA] § 502(a)." In the end, because the district court concluded that the application of the AWP at issue was subject to complete preemption, not only did it hold that the action was removable to federal court, but also that the savings clause of ERISA § 514 did not apply. As to Humana's motion to dismiss, the district court found that it must grant the motion because QIC's "sole claim for relief is not viable, and QIC has neither sought to amend its claim nor asserted that its claim is cognizable under ERISA."

QIC appeals and notes six issues for review; although, as its counsel suggested at the outset of oral argument, all of them come down to the argument that conflict, not complete, preemption is how the district court "should have analyzed the case." In short, QIC claims that its AWP claim is an independent claim that does not duplicate ERISA's enforcement provisions and could not have been brought by QIC under ERISA, and, thus, if anything, is subject only to conflict (not complete) preemption, together with its savings clause, which QIC says applies under Miller. Humana counters that the AWP claim depends upon an interpretation of an ERISA plan and could be brought by QIC through the assignment of rights by Carstens, and, thus, is subject to complete preemption (without savings), which Humana argues yields removal—and ultimately dismissal—under Davila.

B.    Case #2 - The Williby Claim

On or before December 21, 2004, Williby began to suffer from a colon condition. To treat this condition, Williby's physician prescribed a course of home infusion therapy and she and her physician chose QIC to provide the drugs necessary for such treatment. QIC provided Williby the prescribed drugs from approximately December 21, 2004 until March 24, 2005, at a cost of $31,921.59.

6

As part of their relationship, QIC asserts that "all of Williby's rights, benefits, and claims under the Plan were assigned to [QIC]." After treating Williby, QIC sought payment from Humana, but Humana refused on the same out-of-network grounds as in Case #1. Nevertheless, and as in Case #1, QIC claims that "pursuant to" the AWP, it "is entitled to payment from [Humana] pursuant to the Plan for the . . . drugs [it] provided."[5] Again, QIC claims that it met all "terms and requirements" for coverage under the AWP.

Faced with Humana's denial of payment for services it rendered to Williby, QIC filed suit with an Original Petition (or "complaint") on December 28, 2006 in a Texas state court. For its relief, QIC seeks $31,921.59 in payment for the drugs it provided to Williby, as well as resulting damages, interest, fees, and costs. In response, Humana filed an Original Answer by general denial on April 10, 2007. Two days later, Humana removed the case to federal court, arguing that QIC's claim is preempted by ERISA. On June 13, 2007, Humana moved to dismiss under Rule 12(b)(6), arguing, as in Case #1, that QIC's only claim is an AWP claim that is "completely preempted" by ERISA and subject to dismissal because the only benefits it can give are those otherwise provided by the Plan.

On August 23, 2007, QIC responded to Humana's motion. Unlike Case #1, it did not move to remand.[6] In its response, QIC relied almost exclusively on Miller, arguing that its claim is not preempted because, at a minimum, the AWP

---

[5] As in Case #1, QIC's "Cause of Action" in its complaint consists of alleged "Violations of the Texas 'Any Willing Provider' Statute."

[6] QIC did not challenge removal in the district court in Case #2, but only dismissal (although it challenges both on appeal). In any event, the removal issue is before the court in both Case #1 and Case #2 as it concerns subject matter jurisdiction.

is an insurance regulation, and is therefore "saved from preemption" under 29 U.S.C. § 1144(b)(2)(A). Unlike Case #1, in its response, QIC asked for leave to amend in the event that the court found preemption. QIC's request was not addressed by the district court, though QIC did not appeal this issue.[7]

On October 19, 2007, the district court granted Humana's motion to dismiss. It did not address an effort by Humana to convert its motion to one for judgment on the pleadings. Based on the reasoning in the other QIC cases noted above by the court in Case #1—as well as that of the court in Case #1 itself—the district court found that "[b]ecause [QIC] is seeking benefits allegedly due under a Plan outside of and in addition to ERISA's remedial scheme, complete preemption applies." Therefore, the court concluded that it must grant Humana's motion because QIC's "claim for relief under the AWP is not viable."

QIC appeals and notes three issues for review, all of which mirror the theme in Case #1—i.e., complete ERISA preemption does not apply because its AWP claim is an independent one that does not duplicate ERISA's enforcement provisions and could not have been brought by QIC under ERISA. QIC argues that, if anything, its claim would only be subject to conflict preemption, and then saved as an insurance regulation under Miller. As in Case #1, Humana counters that the AWP claim depends upon an interpretation of the Plan and could be brought by QIC through Williby's assignment, and, thus, is subject to complete preemption under Davila. It also adds that QIC failed to discuss complete preemption below. As QIC contends, however, even the district court noted that,

---

[7] At oral argument, QIC's counsel did allude to possible amendments to its claim, but the proposal was limited to non-ERISA claims, which would be subject to dismissal in any event where, as here, a court holds that "complete preemption" is the rule of the case.

"[t]he parties dispute whether ERISA completely preempts [QIC]'s claims," not to mention that the issue is essentially jurisdictional.

## II. DISCUSSION

Although the appeals in Case #1 and Case #2 concern both removal and dismissal (or judgment on the pleadings), the choice by QIC to limit itself to state law claims results in the cases essentially being limited to one, central question: Are QIC's respective claims under the AWP "completely preempted" by ERISA? For the reasons provided below, we conclude that they are.

A. Standard of Review

This court reviews a district court's denial of a motion to remand a case from federal court to state court, or a mere refusal to remand sua sponte, under a de novo standard. See Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1117 (5th Cir. 1998). Moreover, "when faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy." Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998).

This court also reviews a grant of judgment on the pleadings under Rule 12(c) de novo. See Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001). A motion for judgment under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). See Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." Hughes, 278 F.3d at 420 (internal quotations omitted). Although the factual allegations in the plaintiff's pleadings must be accepted as true, see id., a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

B.    Discussion

As the Supreme Court held in Davila, "'causes of action within the scope of the civil enforcement provisions of [ERISA] § 502(a) [are] removable to federal court.'"  542 U.S. at 209 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987)).  "[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  Id. (quoting Metro. Life, 481 U.S. at 65–66).  In Case #1, QIC states that its only claim "seek[s] payment for the prescription drugs it provided to [Carstens] under the Texas AWP statute."  In Case #2, QIC states, "[p]ursuant to [the AWP], [it] is entitled to payment from [Humana] pursuant to the Plan for the . . . drugs [it] provided to Williby."  We hold that QIC's claims are "within the scope" of § 502(a), and, thus, are removable under the complete preemption described in Davila.  542 U.S. at 209.[8]  Furthermore, because QIC's only claims are preempted state law claims, we hold that dismissal, or in the alternative, judgment on the pleadings, is appropriate as well.

(1)    Removal

Under the removal statute, "any civil action brought in a State court of which the district courts have original jurisdiction, may be removed by the defendant" to federal court.  28 U.S.C. § 1441(a).  The type of original jurisdiction at issue here is federal question jurisdiction, which covers cases "arising under

---

[8]  Our holding of complete preemption is limited to the assigned claims for benefits under the Plan at issue pursuant to Davila.  Although the line might be a fine one unlikely to ease concerns that ERISA is becoming an "increasingly tangled . . . regime," Davila, 542 U.S. at 222 (Ginsburg, J., concurring) (internal quotations omitted), our analysis does not suggest that other claims—e.g., the declaratory judgment in Miller—are similarly preempted.

the Constitution, laws, or treaties of the United States." Id. § 1331. Ordinarily, "arising under" is determined by the "well-pleaded complaint rule"—i.e., "'a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law.'" Davila, 542 U.S. at 207 (quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 10 (1983)). Here, QIC's complaints cite the AWP as the chief basis for their claims. However, there is an exception to the well-pleaded complaint rule "'when a federal statute wholly displaces the state-law cause of action through complete preemption.'" Id. (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)). As noted above, the Supreme Court held in Davila that such preemption that would permit removal regardless of the plaintiff's complaint applies to "causes of action within the scope of the civil enforcement provisions of [ERISA] § 502(a)." 542 U.S. at 209.

The pertinent provision of ERISA § 502(a) is as follows:

> A civil action may be brought—
>      (1) by a participant or beneficiary— . . .
>           (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . .

29 U.S.C. § 1132(a)(1)(B). The foregoing provision, together with other actions authorized for participants, beneficiaries, or the Secretary of Labor to redress other statutory violations, such as failure to provide plan information or breach of fiduciary duty, see id. § 1132(a), as well as other remedies left out—e.g., damages for certain benefit denials, see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 57 (1987)—offer "a comprehensive civil enforcement scheme" that the

Supreme Court has described as "represent[ing] a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans," id. at 54.

The Texas AWP provides, in pertinent part, that:

Sec. 2. (a)   A health insurance policy or managed care plan that is delivered, issued for delivery, or renewed or for which a contract or other agreement is executed may not:

(1)   prohibit or limit a person who is a beneficiary of the policy from selecting a pharmacy or pharmacist of the person's choice to be a provider under the policy to furnish pharmaceutical services offered or provided by that policy or interfere with that person's selection of a pharmacy or pharmacist;

(2)   deny a pharmacy or pharmacist the right to participate as a contract provider under the policy or plan if the pharmacy or pharmacist agrees to provide pharmaceutical services that meet all terms and requirements and to include the same administrative, financial, and professional conditions that apply to pharmacies and pharmacists who have been designated as providers under the policy or plan . . .

* * *

Sec. 4.   This article does not require a health insurance policy or managed care plan to provide pharmaceutical services.

* * *

Sec. 5.   The provisions of Section 2 of this article do not apply to a self-insured employee benefit plan that is subject to [ERISA].

TEX. INS. CODE ANN. art. 21.52B §§ 2(a), 4, 5. "The purpose of any willing provider laws is to allow freedom of choice to policyholders and allow health care providers access to HMOs and PPOs." William J. Bahr, Comment,

*Although Offering More Freedom to Choose, "Any Willing Provider" Legislation is the Wrong Choice*, 45 U. KAN. L. REV. 557, 582 (1997).

In Case #1, QIC concedes that it "asserted no other claims" than "seeking payment for the prescription drugs it provided to [Carstens]," but it contends that such a claim arises from the AWP and not ERISA. In Case #2, QIC claims "payment" under the Plan for Williby's drugs, but also asserts that its claim is only under the AWP and not ERISA. In short, QIC argues that its claims are "discrimination claims" under the AWP, and not claims for benefits, and, thus, would not duplicate ERISA's enforcement provisions, as required for complete preemption. In arguing that the AWP stands alone as the source of its claims, QIC stresses the AWP language that a "plan . . . may not . . . deny a pharmacy . . . the right to participate as a contract provider under the policy or plan if the pharmacy . . . agrees to provide pharmaceutical services that meet all terms and requirements . . . ." TEX. INS. CODE ANN. art. 21.52B § 2(a)(2) (emphasis added). Moreover, QIC contends that even if such claims were otherwise covered by ERISA, it lacks standing to assert them and, thus, its claims under the AWP cannot duplicate ERISA enforcement in any event.

Humana argues that QIC's claims are completely preempted because, no matter how QIC labels them, in each case QIC is making a claim for benefits under the Plan. Thus, Humana argues that QIC's claims are covered by ERISA § 502(a)(1)(B). In arguing that QIC's claims depend upon the Plan, Humana emphasizes the AWP language that a pharmacy's right to participate arises only if it "agrees to provide . . . services that meet all terms and requirements and . . . conditions that apply to pharmacies . . . who have been designated as providers under the policy or plan . . . ." TEX. INS. CODE ANN. art. 21.52B §

13

2(a)(2) (emphasis added). As for standing, Humana asserts that a third-party provider of health care has standing to make a claim under § 502(a)(1)(B) where, as here, there has been an assignment to the provider by the participant.

In Davila, the Supreme Court confronted state claims against HMOs for negligence "in the handling of coverage decisions" under their benefit plans. 542 U.S. at 204. In a unanimous decision, the Court held that such claims were completely preempted under ERISA despite any violation of state law because "interpretation of the terms of [plaintiffs'] benefit plans form[ed] an essential part of their [state law] claim." Id. at 213. In so holding, the Court noted that there would be no state question at all if the benefits at issue were not available under the plans. See id. Similarly, there would be no AWP question here if the "terms" and "requirements" of the Plan were not met. Indeed, the AWP itself expressly disclaims any mandate of pharmaceutical benefits by its terms. See TEX. INS. CODE ANN. art. 21.52B § 4 ("This article does not require a health insurance policy or managed care plan to provide pharmaceutical services.").

QIC confesses a lack of independence from the Plan when it states in its complaints that it "provided prescription drugs . . . to [Carstens and Williby] pursuant to the terms of the Plan and the Texas AWP statute. As such, [QIC] is entitled to payment from [Humana] pursuant to the Plan . . . ." In essence, QIC's AWP claims are for benefits under the Plan and, thus, are completely preempted and subject to removal, regardless of any difference in their elements, see Davila, 542 U.S. at 216, or how artful QIC is in its pleadings, see McGowin v. ManPower Int'l, Inc., 363 F.3d 556, 559 (5th Cir. 2004). See also Quality Infusion, 2006 WL 3813774, at *7 (applying similar analysis to AWP); Cleghorn v. Blue Shield of Cal., 408 F.3d 1222, 1224–26 (9th Cir. 2005) (holding

14

that a claim based on an insurer's failure to provide "emergency" benefits under state law is completely preempted because "the factual basis of the complaint . . . was the denial of reimbursement of plan benefits").

As far as standing is concerned, QIC argues that even if its AWP claims were otherwise dependent on the Plan, it lacks standing to bring a claim under ERISA and, therefore, its claims cannot meet the enforcement "duplication" requirement for complete ERISA preemption. To that point, the Supreme Court held in Davila that complete preemption not only requires a plan-dependent claim, but also that "an individual, at some point in time, could have brought his claim under ERISA § 502[]." 542 U.S. at 210. Yet, as QIC itself repeatedly emphasized in the district court, both Carstens and Williby expressly assigned their "rights, benefits, and claims under the Plan." "It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim." Harris Methodist Fort Worth v. Sales Support Servs., Inc. Employee Health Care Plan, 426 F.3d 330, 333–34 (5th Cir. 2005)); see also Tango Transport v. Healthcare Fin. Servs., LLC, 322 F.3d 888, 893 (5th Cir. 2003).[9]

QIC cites several cases that it contends support its argument that its AWP claims are independent of the Plan or any assignment thereunder. These cases include Pascack Valley Hospital, Inc. v. Local 464A, UFCW Welfare

---

[9] At oral argument, QIC tried to distinguish between section 2(a)(1) of the AWP, which concerns beneficiary access, and section 2(a)(2) of the AWP, which concerns pharmacy access, see TEX. INS. CODE ANN. art. 21.52B § 2(a)(1)-(2), arguing that assignment is irrelevant to claims under the latter section. Whatever merit this argument might have in the abstract, QIC's claims here, and the corresponding relief that is sought, are dependent upon the "terms and requirements" of the Plan as they apply to Carstens and Williby. Id. § 2(a)(2).

Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004); Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc., 187 F.3d 1045 (9th Cir. 1999), Memorial Hospital System v. Northbrook Life Insurance Co., 904 F.2d 236 (5th Cir. 1990); Lone Star OB/Gyn Assocs. v. Aetna Health, Inc., No. SA-07-CA-848, 2008 WL 2225678 (W.D. Tex. May 29, 2008); Memorial Hermann Hospital System v. Aetna Health Inc., No. 4:06-CV-0828, 2007 WL 1701901 (S.D. Tex. June 11, 2007); Tenet Healthsystem Hospitals, Inc. v. Crosby Tugs, Inc., No. 2:04-CV-1632, 2005 WL 1038072 (E.D. La. Apr. 27, 2005); and Children's Hospital Corp. v. Kindercare Learning Centers, Inc., 360 F. Supp. 2d 202 (D. Mass. 2005). Of these several cases, only Blue Cross, Lone Star,[10] and Memorial Hermann are arguably helpful to QIC given that there was no assignment in either Tenet, see 2005 WL 1038072, at *2, or Pascack, see 388 F.3d at 401, nor were there any plan benefits at issue for the cited claims in Children's Hospital, see 360 F. Supp. 2d at 206, or Memorial Hospital System, see 904 F.2d at 250.[11]

In Blue Cross, the Ninth Circuit held that a claim for breach of a medical plan's duty to pay providers under a provider agreement was not preempted. 187 F.3d at 1051–52. In Lone Star, a district court found that claims under state insurance law for breach of an insurer's agreement with a health care provider

---

[10] We note that the district court's decision in Lone Star, 2008 WL 2225678, is presently on appeal to this court under Case No. 08-50646. Consequently, any discussion of the decision herein is only intended to distinguish it from the present cases, not to endorse or reject its ultimate merit on appeal.

[11] In Memorial Hospital System, the court distinguished between assigned state law claims for benefits, which it found would be subject to both conflict and complete preemption, and a state law claim for negligent misrepresentation of coverage that did not, in fact, exist, which it found was not subject to any preemption because it did not involve "the plan's actual obligations . . . and in no way [sought] to modify these obligations." 904 F.2d at 250.

were not preempted. 2008 WL 2225678, at *17–18. Finally, in Memorial Hermann, a district court found that claims for breach of an insurer's obligation to pay a provider under a managed care agreement and in accordance with a statutory timetable were not preempted. 2007 WL 1701901, at *1. Each of the foregoing three cases included among their facts an assignment of rights by recipients of related health care services. See Blue Cross, 187 F.3d at 1052; Lone Star, 2008 WL 2225678, at *17; Memorial Hermann, 2007 WL 1701901, at *4.

QIC argues that, like the contracts in Blue Cross, Lone Star, and Memorial Hermann, the AWP acts as an independent source of rights outside of the Plan and/or its participants. However, as all three cases point out, the disputes there were "not over the right to payment, which might be said to depend on the patients' assignments to the [p]roviders [of benefits under the terms of a plan], but the amount, or level, of payment, which depends on the terms of [entirely separate and non-plan dependent] provider agreements." Blue Cross, 187 F.3d at 1051; Memorial Hermann, 2007 WL 1701901, at *5 (quoting same language); see also Lone Star, 2008 WL 2225678, at *5 (describing plaintiff's argument to same effect). The opinions in each case found that the amounts there depended chiefly upon contracts between provider and insurer, as well as applicable state law, and not any ERISA plan. See Blue Cross, 187 F.3d at 1051; Lone Star, 2008 WL 2225678, at *17–18; Memorial Hermann, 2007 WL 1701901, at *5.

The AWP is perhaps a means by which QIC can gain some rights, but the right to payments, as well as their amounts, in the cases at hand—at least from Humana—depend upon the Plan. Here, the claims not only involve participants and assignments, they also rely on Plan "terms and requirements." TEX. INS. CODE ANN. art. 21.52B § 2(a)(2). Although QIC contends on appeal that its

17

claims are merely for independent discrimination under the AWP, its repeated invocation of the assignments by Carstens and Williby, along with its express claim in both complaints to being "entitled to payment . . . pursuant to the Plan for the [exact amounts] in prescription drugs," distinguishes QIC's claims in such complaints as assignment-based, rather than independent, claims for relief under the "terms and requirements" of the Plan.[12]  Consequently, we hold that, as alleged, the Plan "forms an essential part of [QIC's AWP] claim[s]," and, thus, such claims are subject to complete preemption.  Davila, 542 U.S. at 213.

Unlike the payors in Blue Cross, Lone Star, or Memorial Hermann—each of which had a duty to pay contracted-for amounts regardless of amounts from any ERISA plan that may also have been involved—only Carstens or Williby, not Humana, would have any duty to QIC for amounts other than those dictated by the Plan.  Although discrimination against out-of-network providers might be actionable under the AWP in other scenarios, there is no violation as the matter is posited here without the Plan and Carstens or Williby.  Unlike the contracts in Blue Cross, Lone Star, or Memorial Hermann, the AWP, as it is used here, is an empty shell without the Plan or the benefits provided to its participants for which payments therefrom were assigned.  An analysis by District Judge Lake captured a virtually identical situation involving QIC as follows:

> Here, the only action complained of is [the plan administrator's] failure to reimburse [QIC] for the cost of the drugs supplied to [the beneficiary] under his ERISA-governed Plan, the benefits of which

---

[12] As counsel for Humana observed at oral argument, the AWP provisions under which QIC is suing in Case #1 and Case #2—at least as presented by QIC—do not present a civil penalty or other cause of action independently available to a private third party.  See TEX. INS. CODE ANN. art. 21.52B.  For an example of such relief, see ARK. CODE ANN. § 23-99-207.

> were assigned to [QIC]. The only relationship [the administrator] has with [QIC] is through its administration of the employee welfare benefit plan. As assignee of [the beneficiary's] benefits under the Plan, [QIC] steps into the beneficiary's shoes and can only claim as much as [the beneficiary] was entitled to under the Plan. The claim therefore could have been brought under ERISA section 502(a)(1)(B) [and is, thus, completely preempted].

Quality Infusion, 2007 WL 760368, at *3 (footnote omitted).

The final argument that QIC raises is that notwithstanding any assignment of rights under ERISA § 502 or its related standing, by assignment or otherwise, QIC's claims are expressly protected by the unanimous decision by the Supreme Court in Miller, 538 U.S. 329. In Miller, the Court held that a Kentucky statute similar to the AWP at issue in this case was preempted, but was saved from such preemption as a "law . . . which regulates insurance" under ERISA § 514(b)(2)(A). 583 U.S. at 342. Under Miller, QIC is likely correct that the AWP at issue here would similarly be saved from preemption as presented there. However, the preemption at issue in Miller was conflict preemption under ERISA § 514, i.e., it covers laws that "relate to" an ERISA plan, whereas the preemption at issue here is complete preemption under ERISA § 502. The savings clause applies only to the former type, not the latter, while removal applies only to the latter, not the former. As the Court held in Davila:

> Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as "regulating insurance" will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.

542 U.S. at 217–18.

Miller seems difficult to ignore given that it involves a virtually identical statute to the cases at hand. However, as the district court found, the issues in

19

Miller were conflict preemption and insurance savings under ERISA § 514, whereas the issues here are complete preemption and removal under ERISA § 502.[13]  Moreover, the suit in Miller was a declaratory judgment action filed in federal court ab initio by a group of HMOs for a declaration on the application of the Kentucky statute to their network arrangement generally, see id., 538 U.S. at 332–33, not, as here, the removal of state court actions based, at least in part, on assigned claims for benefits.  One might try to infer from the Supreme Court's silence on the specific issue of complete preemption in Miller that it would never be applicable to the AWP, as QIC has urged.  And yet, the emphatic language of Davila suggests that, at least when it comes to the narrow issue of claims for plan benefits, Miller is inapposite as to their removal.  See Davila, 542 U.S. at 217–18 (distinguishing preemption under ERISA §§ 502 and 514); see also Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc., 413 F.3d 897, 913–14 (8th Cir. 2005); Arana v. Ochsner Health Plan, 338 F.3d 433, 439 (5th Cir. 2003) (en banc).[14]

(2)   Dismissal

Having found that QIC's AWP claims are completely preempted under ERISA § 502, and that QIC has limited itself to such claims and not sought to

---

[13]  Indeed, a review of all three of the relevant opinions in Miller—No. 3:97-CV-0024, 1998 WL 34103663 (E.D. Ky. Aug. 6, 1998); 227 F.3d 352 (6th Cir. 2000); and 538 U.S. 329 (2000)—reveals no treatment of complete preemption under ERISA § 502.

[14]  This court also addressed the AWP at issue in Texas Pharmacy Ass'n v. Prudential Insurance Co. of America, 105 F.3d 1035 (5th Cir. 1997).  There, the court dealt with conflict preemption, and although it found such preemption, it did not find savings.  Id. at 1037–38.  The holding on the latter issue is at least called into doubt by Miller.  Because it dealt only with ERISA § 514 and not § 502, however, Texas Pharmacy is inapposite in any event.

add any claims under ERISA, both Case #1 and Case #2 are not only subject to removal but are also subject to dismissal or judgment on the pleadings. As described above, a motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). See Johnson, 385 F.3d at 529. "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." Hughes, 278 F.3d at 420 (internal quotation omitted). Though one might try to infer claims for benefits under ERISA, QIC's repeated disavowal of such a claim ultimately dooms any such inference. Furthermore, QIC readily admits that both Carstens and Williby assigned their rights to QIC, and in none of its filings here or in the district court has it ever argued that the Plan is not otherwise subject to ERISA. In the end, as QIC practically concedes by dealing almost exclusively with the remand issue at oral argument, a finding of complete preemption in these cases necessitates their dismissal.

## III. CONCLUSION

For the foregoing reasons, we both AFFIRM the district court's denial of QIC's motion to remand in Case #1 and AFFIRM the district court's grants of Humana's motions for dismissal or judgment on the pleadings in both Case #1 and Case #2.

OWEN, Circuit Judge, concurring:

I fully join the panel's opinion. I write only to emphasize that QIC may have rights and remedies pursuant to the Texas Any Willing Provider statute[1] that are not preempted by ERISA. ERISA does not preempt state "law[s] . . . which regulat[e] insurance"[2] unless the state law attempts to provide remedies "outside of, or in addition to, ERISA's remedial scheme."[3] QIC may also have remedies under ERISA. As an assignee, QIC may be able to recover benefits through an action under § 502(a) of ERISA.[4]

Texas may prohibit insurers, such as Humana, from discriminating against willing providers. The Supreme Court made this clear in Kentucky Association of Health Plans, Inc. v. Miller, concluding that "a law mandating certain insurer-provider relationships" did "regulate insurance" within the meaning of ERISA's savings clause,[5] and acknowledging the validity of such a state law: "Those who wish to provide health insurance in Kentucky (any 'health insurer') may not discriminate against any willing provider."[6] QIC could sue Humana seeking a declaratory judgment that based on Texas law, it has "the

---

[1] TEX. INS. CODE ANN. art. 21.52B, § 2(a) (Vernon 2007).

[2] 29 U.S.C. § 1144(b)(2)(A).

[3] See Aetna Health Inc. v. Davila, 542 U.S. 200, 217-18 (2004) ("[E]ven a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.").

[4] 29 U.S.C. § 1132(a).

[5] 538 U.S. 329, 337-38 (2003).

[6] Id. at 338.

right to participate as a contract provider"[7] under Humana's health care policies. What QIC may not do is seek to recover benefits due to Carstens or Williby under Humana's plan through the guise of its discrimination claim.

Through the assignments from Carstens and Williby or otherwise, QIC may also have a means of obtaining the benefits of the provisions of the Texas AWP statute that require "[a] health insurance policy or managed care plan" to permit a beneficiary to select a pharmacy or pharmacist of his or her choosing.[8] The Texas AWP statute purports to void a policy or plan provision that conflicts with this right.[9] But the parties have not briefed, and we do not consider, issues surrounding an action against Humana either as an insurer or as the administrator of a plan. Those issues may include the applicability of ERISA's "deemer clause"[10] and whether the Texas AWP statute could be enforced directly against an insured health care plan even though the Texas statute purports to

---

[7] TEX. INS. CODE ANN. art. 21.52B, § 2(a)(2) (Vernon 2007).

[8] Id. § 2(a)(1):

A health insurance policy or managed care plan . . . may not:

(1)     prohibit or limit a person who is a beneficiary of the policy from selecting a pharmacy or pharmacist of the person's choice to be a provider under the policy to furnish pharmaceutical services offered or provided by that policy or interfere with that person's selection of a pharmacy or pharmacist. . . .

[9] Id. § 3 ("A provision of a health insurance policy or managed care plan that is delivered, issued for delivery, entered into, or renewed in this state that conflicts with Section 2 of this article is void to the extent of the conflict.").

[10] 29 U.S.C. § 1144(b)(2)(B).

23

regulate insurance[11] or whether QIC has an action under ERISA § 502(a) "for benefits due, [seeking] only the application of saved state insurance law as a relevant rule of decision in [the] § 502(a) action."[12]

The pleadings QIC filed in state courts seek payment, based on state law, for the prescription drugs provided to Carstens and Williby. This is a claim for benefits that must be pursued as such under ERISA, even if state law mandates what those benefits must include. QIC's claims, as currently cast, are preempted.

---

[11] See generally FMC Corp. v. Holliday, 498 U.S. 52, 61 (1990) ("[E]mployee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws 'purporting to regulate insurance' after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.").

[12] UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 376 n.7 (1999); see also id. at 372-73 (holding that a California common-law requirement "that insurers show prejudice before they may deny coverage because of late notice" regulated insurance and was saved from preemption; the insurance company that issued a group disability policy as an insured employee benefit plan could not rely on the notice provisions to deny coverage unless there was prejudice).